1  LIONEL Z. GLANCY (#134180)
2  MICHAEL GOLDBERG (#188669)
   ROBERT V. PRONGAY (#270796)
3  GLANCY BINKOW & GOLDBERG LLP
4  1801 Avenue of the Stars, Suite 311
   Los Angeles, California 90067
5  Telephone:   (310) 201-9150
6  Facsimile:    (310) 201-9160
   E-mail:     info@glancylaw.com
7
8  Attorneys for Plaintiff Sid Murdeshwar

9  [Additional Counsel on Signature Page]

10
11              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
12
13  _____   CV10 - 6794 DSF (JEMx)
14  SID MURDESHWAR, Individually and on   ) No.
15  Behalf of All Others Similarly Situated,   )
                                          ) CLASS ACTION
16              Plaintiff,               )
                                          ) COMPLAINT FOR
17       v.                              ) VIOLATIONS OF THE
                                          ) FEDERAL SECURITIES
18                                        ) LAWS
19  SEARCHMEDIA HOLDINGS LIMITED,         )
20  f/k/a IDEATION ACQUISITION CORP.,     )
    ROBERT N. FRIED, PHILLIP FROST,       )
21  RAO UPPALURI, STEVEN D. RUBIN,        )
22  GLENN HALPRYN, THOMAS E. BEIER,       )
    DAVID H. MOSKOWITZ, SHAWN             )
23  GOLD, GARBO LEE, PAUL CONWAY,         )
24  QINYING LIU, EARL YEN, and            ) DEMAND FOR JURY TRIAL
    JENNIFER HUANG,                       )
25                                        )
26              Defendants.               )
27  _____              )
28

1

Plaintiff Sid Murdeshwar, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by SearchMedia Holdings Limited, formerly Ideation Acquisition Corp. ("SearchMedia" or "Ideation" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by SearchMedia; and (c) review of other publicly available information concerning SearchMedia.

## NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action on behalf of persons or entities who purchased or otherwise acquired SearchMedia (formerly Ideation) securities between April 1, 2009, and August 20, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Ideation was a blank check company organized under the laws of the State of Delaware on June 1, 2007, and formed for the purpose of acquiring, through a merger, capital stock exchange, asset acquisition or other similar business combination, one or more businesses. On November 26, 2007, Ideation completed its initial public offering ("IPO") of 10,000,000 units, with each unit consisting of one

share of common stock and one warrant exercisable for an additional share of common stock, at a price of $8.00 per unit. Under Ideation's amended and restated certificate of incorporation, Ideation would continue in existence only until November 19, 2009. If Ideation had not completed a business combination by such date, its corporate existence would cease, except for the purposes of winding up its affairs and liquidating, pursuant to Section 278 of the Delaware General Corporation Law.

3.    This action concerns Ideation's combination with SearchMedia International Limited ("SMIL") which was completed on October 30, 2009 (the "Merger"), and arises from material misstatements and/or omissions in the joint proxy statement and prospectus (the "Proxy/Prospectus") dated October 5, 2009, and other public statements during the Class Period related to the Merger and SMIL.

4.    At the start of the Class Period, on April 1, 2009, Ideation announced that it had signed a definitive agreement to acquire SMIL, a purported nationwide multi-platform media company in China. SMIL claims to be an integrated operator of outdoor billboard and in-elevator advertising networks in China.

5.    According to the April 1, 2009, announcement, Ideation and SMIL entered into an agreement and plan of merger, conversion and share exchange ("Share Exchange Agreement"). Pursuant to the Share Exchange Agreement, following

receipt of stockholder approval by Ideation, Ideation would complete a corporate reorganization (pursuant to which Ideation would merge with and into ID Arizona Corp. ("ID Arizona") with ID Arizona surviving the merger and ID Arizona becoming a Cayman Islands exempted corporation) that would result in a redomestication of Ideation into a Cayman Islands exempted company ("Ideation Cayman"), after which the holders of SMIL's shares, warrants, options and restricted shares would exchange the outstanding securities of SMIL held by them for ordinary shares, warrants, options and restricted shares, respectively, of Ideation Cayman. Under the terms of the Share Exchange Agreement, Ideation announced that it would issue to SMIL shareholders 8,578,215 million ordinary Ideation Cayman shares, representing approximately 41% of the ordinary shares of the combined company, in exchange for all outstanding SMIL common shares. On a fully diluted basis, SMIL would own 44% of the combined company. Additionally, SMIL warrants, options and restricted shares would be exchanged for new Ideation Cayman warrants, options and restricted shares. Based on Ideation common shares, warrants and options on a treasury method basis, and a conversion value of $7.8815 per share, the equity value of the transaction at closing was approximately $176.7 million.

6.     On November 2, 2009, Ideation announced that it had completed the acquisition of SMIL. Ideation further announced that the transaction had been

approved by the stockholders of Ideation at a special meeting of stockholders on October 27, 2009, and consummated on October 30, 2009. Ideation also announced that it had changed its name to SearchMedia Holdings Limited ("SearchMedia").

7.    On August 20, 2010, SearchMedia announced that the historical financial statements of SMIL for the 2007 and 2008 fiscal years would have to be restated and that the financial statements from these periods can no longer be relied upon. SearchMedia informed investors that it estimated that SMIL's revenue in 2007 and 2008 had been overstated by approximately $6 million and $25 million, respectively.

8.    On this news, SearchMedia's stock fell $0.78 per share, or nearly 23%, to close on August 20, 2010, at $2.62 per share on unusually heavy trading volume, and further declined an additional $0.92 per share, more than 35%, to close on August 23, 2010, at $1.70 per share, again on unusually heavy trading volume. Over the course of these two days of trading, SearchMedia's stock declined a combined $1.70 per share, or 50%, from the closing price of $3.40 per share on August 19, 2010.

9.    Throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse facts about SearchMedia's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that SMIL was improperly

recognizing revenue; (2) that certain of SMIL's accounts receivable related to sales generated primarily in the in-elevator business were uncollectible, (3) that, as a result, SMIL's financial results were overstated; (4) that SMIL's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (5) that SMIL lacked adequate internal and financial controls; and (6) as a result of the above, SMIL's financial statements were materially false and misleading at all relevant times.

10.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **JURISDICTION AND VENUE**

11.   The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

13.   Venue is proper in this Judicial District pursuant to §28 U.S.C. §1391(b), §27 of the Exchange Act (15 U.S.C. §78aa(c)). Many of the acts charged herein, including the preparation and dissemination of materially false and/or

misleading information, occurred in substantial part in this District. Additionally, at times relevant hereto, Ideation maintained executive offices within this Judicial District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff Sid Murdeshwar, as set forth in the accompanying certification, incorporated by reference herein, purchased SearchMedia securities during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant SearchMedia, formerly Ideation, is a Cayman Islands corporation with its principle executive offices located at 15A Zhao Feng Universe Building, 1800 Shong Shan Xi Road, Shanghai, China 200235. Additionally, at times relevant hereto, Ideation maintained an office within this judicial district at 1990 S. Bundy Boulevard, Suite 620, Los Angeles, CA 90025.

17.     Defendant Robert N. Fried ("Fried") was, at all relevant times, President, Chief Executive Officer ("CEO"), and Director of Ideation up until the Merger, and

was, at all relevant times, Co-Chairman of SearchMedia after the Merger. Defendant Fried signed or authorized the signing of the Proxy/Prospectus.

18.     Defendant Phillip Frost ("Frost") was, at all relevant times, Chairman of the Board of Ideation up until the Merger. Defendant Frost signed or authorized the signing of the Proxy/Prospectus.

19.     Defendant Rao Uppaluri ("Uppaluri"), was at all relevant times, Treasurer, Director, and the principal financial and accounting officer of Ideation up until the Merger. Defendant Uppaluri signed or authorized the signing of the Proxy/Prospectus.

20.     Defendant Steven D. Rubin ("Rubin") was, at all relevant times, Secretary of Ideation and a Director of SearchMedia thereafter. Defendant Rubin signed or authorized the signing of the Proxy/Prospectus.

21.     Defendant Glenn Halpryn ("Halpryn") was, at all relevant times, a Director of Ideation up until the Merger and signed or authorized the signing of the Proxy/Prospectus.

22.     Defendant Thomas E. Beier ("Beier") was, at all relevant times, a Director of Ideation up until the Merger and signed or authorized the signing of the Proxy/Prospectus.

23.     Defendant David H. Moskowitz ("Moskowitz") was, at all relevant

times, a Director of Ideation up until the Merger and signed or authorized the signing of the Proxy/Prospectus.

24.     Defendant Shawn Gold ("Gold") was, at all relevant times, a Director of Ideation up until the Merger and signed or authorized the signing of the Proxy/Prospectus.

25.     Defendant Garbo Lee ("Lee") was, at all relevant times, President of SearchMedia after the Merger, and was, at all relevant times, President of SMIL prior to the Merger.

26.     Defendant Paul Conway ("Conway") was, at all relevant times since February 2010, the CEO of SearchMedia.   Formerly, Defendant Conway was Managing Director of Media Investment Banking for Oppenheimer & Co.

27.     Defendant Qinying Liu ("Liu") was, at all relevant times, Chairman of SMIL prior to the Merger, and was, at all relevant times, Co-Chairman of the Board of SearchMedia after the Merger.

28.     Defendant Earl Yen ("Yen") was, at all relevant times, Vice Chairman of SMIL prior to the Merger, and was, at all relevant times, a Director of SearchMedia after the Merger.

29.     Defendant Jennifer Huang ("Huang") was, at all relevant times, Chief Financial Officer ("CFO") of SMIL between April 2008 and July 2009, and was, at

1  all relevant times, Acting CFO after the Merger until on or around January 4, 2010.

2

3  Additionally, Defendant Huang was, at all relevant times, Chief Operating Officer of

4  SMIL prior to the Merger, and was, at all relevant times, COO of SearchMedia after

5  the Merger.

6

7      30.     Defendants Fried, Frost, Uppaluri, Rubin, Halpryn, Beier, Gold,

8  Moskowitz, Lee, Conway, Liu, Yen, and Huang, are collectively referred to

9  hereinafter as the "Individual Defendants." The Individual Defendants, because of

10

11  their positions with the Company, possessed the power and authority to control the

12  contents of SearchMedia's reports to the SEC, press releases and presentations to

13

14  securities analysts, money and portfolio managers and institutional investors, *i.e.*, the

15  market. Each defendant was provided with copies of the Company's reports and press

16

17  releases alleged herein to be misleading prior to, or shortly after, their issuance and

18  had the ability and opportunity to prevent their issuance or cause them to be

19  corrected. Because of their positions and access to material non-public information

20

21  available to them, each of these defendants knew that the adverse facts specified

22  herein had not been disclosed to, and were being concealed from, the public, and that

23  the positive representations which were being made were then materially false and/or

24

25  misleading. The Individual Defendants are liable for the false statements pleaded

26  herein, as those statements were each "group-published" information, the result of the

27

28

collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

31.    Ideation was a blank check company organized under the laws of the State of Delaware on June 1, 2007, and was formed for the purpose of acquiring, through a merger, capital stock exchange, asset acquisition or other similar business combination, one or more businesses. On October 30, 2009, Ideation acquired SMIL and changed its name to SearchMedia.

### Materially False and Misleading Statements Issued During the Class Period

32.    The Class Period begins on April 1, 2009.  On this day, Ideation issued a press release titled, "IDEATION ACQUISITION CORP. SIGNS DEFINITIVE AGREEMENT TO ACQUIRE SEARCHMEDIA INTERNATIONAL LIMITED." Therein, Ideation, in relevant part, stated:

- National Coverage of 59 Cities and Leading Market Share in Chinese Advertising Industry
- Extensive Advertising Network Across Multiple Media Platforms
- Highly Diversified Advertising Base with Local, National and International Clients
- Profitable and Scalable Revenue Model with Low Capex Requirements
- Proven History of Organic and Acquisitive Growth
- Strong Management Team

Los Angeles, CA — April 1, 2009 — Ideation Acquisition Corp. ("Ideation" or the "Company") (NYSE AMEX: IDI) and SearchMedia International Limited ("SearchMedia") announced today that they have entered into an agreement and plan of merger, conversion and share exchange ("Share Exchange Agreement"). Pursuant to the Share Exchange Agreement, following receipt of stockholder approval by Ideation, Ideation will complete a corporate reorganization that will result in a redomestication of Ideation into a Cayman Islands exempted company ("Ideation Cayman"), after which the holders of SearchMedia's shares, warrants, options and restricted shares will exchange the outstanding securities of SearchMedia held by them for ordinary shares, warrants, options and restricted shares, respectively, of Ideation Cayman.

Following the completion of the merger, SearchMedia's current management team will remain in place with Crystal Liu, Garbo Lee and Jennifer Huang, the current Chairman, President and CFO of SearchMedia, respectively, slated to become the Chairman, President and CFO of the combined company.

"SearchMedia has built a strong market position in China's fast-growing outdoor advertising market and is well positioned to continue its impressive growth trend," stated Dr. Phillip Frost, Chairman of Ideation Acquisition Corp.

"Under the leadership of SearchMedia's seasoned management team, we are confident of continued expansion of their well established position in the marketplace," said Robert Fried, President and CEO of Ideation. "This is a very impressive company operating in a time-tested, proven space."

About SearchMedia

SearchMedia is a leading nationwide multi-platform media company in China. It is one of the largest integrated operators of outdoor billboard and in-elevator advertising networks in China. SearchMedia ranked first in market share of in-elevator advertising displays in 13 out of the 26

most affluent cities in China and ranked second in an additional nine of these cities, according to a leading international research company in China. SearchMedia's core outdoor billboard and in-elevator portfolios are complemented by its subway advertising platform, which together, create an attractive multi-platform "one-stop shop" service for its local, national and international advertising clients that numbered more than 700 cumulatively since its inception.

SearchMedia currently owns and operates a network of over 1,500 high-impact billboards with over 500,000 square feet of surface area and one of China's largest networks of in-elevator advertisement panels consisting of over 180,000 frames in 59 cities around China. Additionally, SearchMedia operates a network of over 1,200 large-format light boxes in concourses of eight major subway lines in Shanghai. According to the Metro Authority of Shanghai, in 2008, these subway lines carried an aggregate average daily traffic of approximately three million commuters.

"We are very excited about the combination of SearchMedia with Ideation," said Crystal Liu, Chairman of SearchMedia. "We believe Ideation is an ideal partner for us because of Ideation's strong capital markets experience, media industry focus, and its management team's successful track record in executing M&A consolidation strategies."

SearchMedia Historical and Projected Financials

| ($ in US millions) | 2007 | 1H08 | 2008E | 2009E |
|---|---|---|---|---|
| Revenue | $ 7.8 | $ 31.3 | $ 88.2 | $ 127.8 |
| EBITDA | $ 2.9 | $ 9.5 | $ 30.2 | $ 49.0 |
| GAAP Net Income (1) | $ 1.6 | $ 4.3 | $ 15.3 | $ 29.7 |

(1) GAAP Net Income adjusted for one time charges. 2H08 Expected Annualized Net Income of $21.9 million.

Summary of the Transaction

Under the terms of the Share Exchange Agreement, Ideation will issue to SearchMedia shareholders 8,578,215 million ordinary Ideation Cayman shares, representing approximately 41% of the ordinary shares of the combined company, in exchange for all outstanding SearchMedia common shares. On a fully diluted basis, SearchMedia will own 44% of the combined company. Additionally, SearchMedia warrants, options and restricted shares will be exchanged for new Ideation Cayman warrants, options and restricted shares.

Based on Ideation common shares, warrants and options on a treasury method basis, and a conversion value of $7.8815 per share, the equity value of the transaction at closing is approximately $176.7 million.

In addition, SearchMedia shareholders and restricted holders will be entitled to receive a potential earnout payment of up to 10,150,352 additional shares of common stock of Ideation Cayman as follows:

| Achieved 2009 US GAAP Net Income[1] | Total Additional Ordinary Shares |
|---|---|
| Less than $25.7 million | None |
| Between $25.7 million — $38.4 million | Between 0 and 10.2 million |
| Greater than $38.4 million | 10.2 million |

(1) Adjusted for extraordinary items and other expense.

Additionally, to the extent SearchMedia fails to earn the maximum number of potential earn-out shares based on achieved 2009 GAAP Net Income, SearchMedia can earn the remainder of the earn-out shares, up to a total of 10,150,352 million, if SearchMedia's stock price closes above $11.82 for 30 consecutive trading days prior to April 15, 2010. The implied transaction valuation (including the maximum potential earnout) yields an attractive 2009 P/E multiple of 6.7x on a fully diluted basis. As of March 27, 2009, the projected 2009 P/E multiples for comparable companies were between 9.7x and 14.8x with a mean multiple of 12.9x.

The transaction is subject to customary closing conditions, completion of all necessary documentation and approval of the shareholders of Ideation Acquisition Corp.

Following the completion of the transaction, Ideation Cayman's board will consist of nine members, five designated by SearchMedia and four designated by certain shareholders of Ideation. At least three of the SearchMedia shareholder designees and two of the Ideation shareholder designees will be independent.

The Frost Group, LLC, an affiliate of Ideation, has committed up to $18.25 million to support the transaction through open market or privately negotiated purchases of publicly held Ideation common shares.

Oppenheimer & Co. Inc. acted as exclusive financial advisor and Akerman Senterfitt acted as legal counsel to Ideation. Latham & Watkins acted as legal counsel to SearchMedia.

33.    On July 15, 2009, September 10, 2009, and September 23, 2009, and September 30, 2009, the Company filed with the SEC revised versions of the Proxy/Prospectus (which had originally been filed with the SEC on March 31, 2009), which were signed by Defendants Fried, Frost, Uppaluri, Rubin, Halpryn, Beier, Moskowitz, and Gold, and which served as a proxy statement containing information for the special meeting of the Ideation stockholders relating to its proposed business combination with SMIL, and as a prospectus of ID Arizona with respect to securities to be issued to Ideation stockholders as part of that business combination. Therein, the versions of the Proxy/Prospectus filed with the SEC on July 15, 2009, September 10, 2009, and September 23, 2009, and September 30, 2009, in relevant part,

contained a discussion of SMIL's financial condition and results of operations, and

also, in relevant part, each substantially repeated the following statements:

> Since SearchMedia entered the out-of-home advertising industry through its predecessors in 2005, it has achieved significant growth through acquisitions and organic expansion. From 2005 . . . SearchMedia expanded its network to over 175,000 poster frames and over 500,000 square feet of billboard space. *SearchMedia's revenues, operating income and net income were $7.8 million, $2.2 million and $1.2 million, respectively, for the period from its inception on February 9, 2007 to December 31, 2007, or the 2007 period, and $88.6 million, $22.8 million and $4.3 million, respectively, for the year ended December 31, 2008.*

\*       \*       \*

## Revenues

SearchMedia derives its revenues from providing advertising services. *During the period from the date of its inception on February 9, 2007 to December 31, 2007, or the 2007 period, and the year ended December 31, 2008, SearchMedia generated revenues of $7.8 million and $88.6 million, respectively.* For the 2007 period, SearchMedia's revenues equal the revenues recognized from June 4, 2007, the date on which the financial statements of SearchMedia's variable interest entities were initially consolidated, to December 31, 2007.

SearchMedia generates its revenues from providing advertising services over its network that consists primarily of the following platforms:

> • *Outdoor billboard platform.* SearchMedia typically signs advertising contracts with terms ranging from six to 24 months for billboard advertisements. Each contract will specify the billboard location, measurement and the price. The contract price varies substantially from contract to contract, based on the location and measurement of the

---

billboard. Deposits or progress payments are typically required at various stages of the contract performance, such as signing of contract, confirmation of content and completion of service period.

- **In-elevator platform.** *SearchMedia typically signs advertising contracts with terms ranging from one to six months for in-elevator advertisements. Typically, SearchMedia negotiates for a contract price for covering a set of cities or districts within cities. SearchMedia may sometimes help certain clients design a detailed plan, based on the contract price and targeted demographics, with particular buildings where the advertisements will be displayed within the cities or districts specified under the contract. Progress payments are typically required at various stages of the contract performance.*

- *Subway advertising platform.* SearchMedia typically signs advertising contracts with terms ranging from one to three months for subway advertisements. The price typically consists of advertising fees and production fees for subway advertisements. Typically, the contracts specify a certain combination of subway stations and SearchMedia has the discretion to assign specific light boxes for each contract. Service payments are typically required at pre-specified dates prior to the completion of the contract.

SearchMedia recognizes advertising service revenues on a straight-line basis over the period in which the advertisement is required to be displayed, starting from the date SearchMedia first displays the advertisement. **SearchMedia only recognizes revenue if the collectibility of the service fee is probable.** The amount of advertising service revenues recognized is net of business taxes and surcharges ranging between 5% and 9%.

Revenue from the provision of advertising services includes revenue from barter transactions, which represents exchange of SearchMedia's

advertising services for goods, non-advertising services or dissimilar advertising services provided by third parties. Dissimilar advertising services represent placing advertisements on other media such as television channels, newspapers or magazines for SearchMedia. Revenues and expenses are recognized from an advertising barter transaction only if the fair value of the advertising surrendered in the transaction is determinable. If the fair value of the advertising surrendered in the barter transaction is not determinable, the barter transaction is recorded based on the carrying amount of the advertising surrendered, which is generally nil. For the 2007 period and the year ended December 31, 2008, revenue recognized from barter transactions amounted to $563,000 and $2.7 million respectively.

SearchMedia's revenue generation is affected by the number of advertising contracts it enters into with clients and the average revenues per contract.

(Emphasis added).

34.    On October 5, 2009, the Company filed the final Proxy/Prospectus with the SEC.    The Proxy/Prospectus, in relevant part, substantially repeated the statements contained in ¶33, *supra*.

35.    On October 27, 2009, Ideation issued a press release entitled, "Ideation Acquisition Corporation Stockholders Approve Acquisition of SearchMedia International Ltd." Therein, the Company, in relevant part, stated:

Wilmington, Delaware – October 27, 2009 – Ideation Acquisition Corp. ("Ideation" or the "Company") (NYSE Amex: IDI, IDI.U, IDI.WS) announced that its stockholders have approved all proposals related to the acquisition of SearchMedia International Ltd. ("SearchMedia") at its special meeting of stockholders held today. Shareholders representing 82.9% of the outstanding shares voted to approve the business

combination with SearchMedia and shareholders representing fewer than 0.4% of shares issued in Ideation's initial public offering elected to convert their shares to cash. The transaction is expected to close on or about October 30, 2009, subject to the satisfaction or waiver of all closing conditions. Upon completion of the acquisition, Ideation will change its name to SearchMedia Holdings Limited and its common stock, units and warrants will continue to trade on the NYSE Amex under the ticker symbols IDI, IDI.U, and IDI.WS, respectively.

"We are very pleased our stockholders have approved the transaction with SearchMedia," stated Robert Fried, President and CEO of Ideation. "We look forward to partnering with SearchMedia's management team, as it executes its aggressive growth strategy and leverages its competitive strengths in the highly attractive outdoor advertising market in China."

"This business combination is a very important milestone for our Company," stated Garbo Lee, President of SearchMedia. "The capital and enhanced management resources from this business combination, along with a U.S. stock market listing, will strengthen our position in the marketplace and enable us to further pursue our strategic growth plans."

36.    On November 2, 2009, Ideation issued a press release entitled, "Ideation Acquisition Corporation Announces Completion of Acquisition of SearchMedia International Ltd." Therein, the Company, in relevant part, stated:

WILMINGTON, DE—(Marketwire — 11/02/09) — Ideation Acquisition Corp. ("Ideation") (AMEX:IDI - News) (AMEX:IDI.U — News) (AMEX:IDI.WS — News) announced that it has completed the acquisition of SearchMedia International Ltd. The transaction was approved by the stockholders of Ideation at its special meeting on October 27, 2009 and was consummated on October 30, 2009. Ideation has changed its name to SearchMedia Holdings Limited ("SearchMedia") and its common stock, units and warrants continue to trade on the NYSE Amex under the ticker symbols: IDI, IDI.U, and

IDI.WS, respectively. SearchMedia also announced that Robert Fried, former President and CEO of Ideation, has been named Co-Chairman of the Board of Directors of SearchMedia.

"We are very proud to announce the completion of this strategic and very successful transaction with Ideation," stated Garbo Lee, President of SearchMedia. "We look forward to utilizing the capital from this transaction to execute our growth plans and to solidify our position as a leading nationwide multi-platform media company in China."

37.     On November 5, 2009, SearchMedia filed with the SEC a Current Report on Form 8-K, which was signed by Defendants Liu, Yen, Lee, and Huang.  Therein, the Company, in relevant part, stated:

*Revenues.  Revenues increased from $31.3 million for the six-month period ended June 30, 2008 to $44.9 million for six-month period ended June 30, 2009, primarily due to rapid organic growth and acquisitions. Of this $13.6 million increase in revenues, the majority was attributable to the acquisitions and the increased number of contracts entered into with clients.* The total number of sales contracts increased from 600 for the six-month period ended June 30, 2008 to 944 for the six-month period ended June 30, 2009. As a result of the challenging business environment and the market downturn during the period, however, the average revenues per contract decreased from $52,000 for the six-month period ended June 30, 2008 to $47,000 for the six-month period ended June 30, 2009.

(Emphasis added).

38.     The statements contained in   ¶¶32-37 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that SMIL was improperly recognizing revenue; (2) that certain of

SMIL's accounts receivable related to sales generated primarily in the in-elevator business were uncollectible, (3) that, as a result, SMIL's financial results were overstated; (4) that SMIL's financial results were not prepared in accordance with GAAP; (5) that SMIL lacked adequate internal and financial controls; and (6) as a result of the above, SMIL's financial statements were materially false and misleading at all relevant times.

### The Truth Begins To Emerge

39.   On December 23, 2009, SearchMedia issued a press release entitled, "SearchMedia Holdings Limited Announces Third Quarter 2009 Results." Therein, the Company, in relevant part, stated:

> Reports Third Quarter 2009 Revenue of $23.1 Million; Third Quarter 2009 Adjusted Net Income Increased 10% Sequentially to $6.8 Million
>
> SHANGHAI, CHINA -- (Marketwire) -- 12/23/09 -- SearchMedia Holdings Limited ("SearchMedia" or the "Company") (NYSE Amex: IDI) (NYSE Amex: IDI.WS), (formerly Ideation Acquisition Corp.), one of China's leading nationwide multi-platform media companies, today announced financial results for its SearchMedia International Ltd. subsidiary for the third quarter ended September 30, 2009. The Company has included and refers below solely to the operating performance of SearchMedia International Ltd. on a stand-alone basis (excluding the combination with Ideation Acquisition Corp.) for the third quarter of 2009, as this is the clearest comparison of the underlying operations year over year.
>
> Third Quarter 2009 Highlights

--     Total revenue in the third quarter of 2009 was $23.1 million representing a slight decrease of 2.1%, compared to $23.6 million from the second quarter of 2009.

--     Gross profit in the third quarter of 2009 was $11.0 million, representing an increase of 9.0% from $10.1 million in the second quarter of 2009.

--     Adjusted net income, excluding share-based compensation expenses, non-recurring interest expense incurred prior to the conversion of certain promissory notes and changes in fair value of warrant liabilities, legal and other professional services expenses related to the Ideation transaction and amortization of intangible assets (non-GAAP), was $6.8 million in the third quarter of 2009, representing an increase of 10.0% from adjusted net income of $6.2 million in the second quarter of 2009.

--     On October 30, 2009, SearchMedia completed its merger with Ideation Acquisition Corp. ("Ideation"). The transaction closed with over 99.6% of Ideation shareholders electing to maintain their investment in the newly combined company, with $78.5 million of proceeds being retained in the merged company.

Ms. Garbo Lee, SearchMedia's President, stated, "Despite the continued challenging advertising market in the third quarter of 2009, we were able to achieve net revenue of $23.1 million and our adjusted net income increased to $6.8 million. Our third quarter results demonstrate our ability to implement cost savings and find efficiencies in our business in order to improve our margins and increase our profitability. Our traditional outdoor billboard business remains stable and continues to possess a high level of occupancy, exceeding 90% during the quarter. In addition, we continue to see improvement in our subway operations as we have been able to increase occupancy and implement cost controls. *In order to address the weakness in our in-elevator business, we have been focusing on higher-quality locations and have terminated many of the underperforming elevator sites in our network, resulting in a smaller but, we believe, superior elevator network. Furthermore, we*

*are focused on enhancing the performance and integration of our elevator platform in order to achieve closer integration of our advertising sales and media site selection activities, which we believe will result in higher occupancy rates and improved profitability in the future.*"

Third Quarter 2009 Results

SearchMedia's total revenue was $23.1 million in the third quarter of 2009, a decrease of 12.8% compared to $26.5 million in the third quarter of 2008 and a decrease of 2.1% from $23.6 million in the second quarter of 2009. *The slight sequential decrease and decrease from the year-ago quarter were due to a decline in the elevator business, partially offset by increases in the billboard and subway businesses.* SearchMedia continues to focus its efforts on cross-selling amongst its three media platforms. In the third quarter of 2009, the Company had successful multi-media campaigns with advertisers in the consumer goods, automotive, and banking and insurance industries.

Cost of revenue was $12.1 million in the third quarter of 2009, representing 52.4% of revenue, compared to $15.4 million, representing 58.1% of revenue in the third quarter of 2008, and $13.5 million, representing 57.2% of total revenue in the second quarter of 2009. The decrease in media cost was primarily due to the reduction in the Company's in-elevator network in order to focus on more profitable locations.

Gross profit in the third quarter of 2009 was $11.0 million, approximately equal to the third quarter of 2008, and an increase of 9.0% from $10.1 million in the second quarter of 2009. Gross margin was 47.6% in the third quarter of 2009, up significantly compared to 41.9% in the third quarter of 2008 and 42.8% in the second quarter of 2009. The year-over-year increase in gross margin was primarily due to improvements in the Company's in-elevator network as it focused on more profitable locations.

Selling and marketing expenses were $1.3 million in the third quarter of

2009, representing a decrease of 42.9% compared to $2.2 million in the third quarter of 2008, and a decrease of 9.7% compared to $1.4 million in the second quarter of 2009. Selling and marketing expenses represented 5.4% of revenue in the third quarter of 2009 compared to 8.3% in the third quarter of 2008 and 5.9% in the second quarter of 2009. The year-over-year and sequential decrease was primarily due to tighter budget control on promotion activities and commission expenses in addition to rationalizing our sales and media development staff in mid-2009. This rationalization continued through the third quarter of 2009.

General and administrative expenses were $3.0 million in the third quarter of 2009, representing an increase of 31.6% compared to $2.3 million in the third quarter of 2008, and an increase of 67.8% compared to $1.8 million in the second quarter of 2009. The increase was mainly due to $1.0 million in legal and other professional services expenses related to the Ideation transaction accrued in the third quarter of 2009. General and administrative expenses excluding the aforementioned charges were $2.0 million, representing a decrease of 12.4% compared to $2.3 million in the third quarter of 2008. The year-over-year decline was attributable to a reduced headcount and tighter expense control.

Operating profit was $6.7 million in the third quarter of 2009, representing an increase of 2.0% from $6.6 million in the third quarter of 2008, and a slight decrease of 2.4% from $6.9 million in the second quarter of 2009. Operating profit margin was 29.2% in the third quarter of 2009, approximately equal to the second quarter of 2009 and higher than 25.0% in the third quarter of 2008 due to the aforementioned cost controls and improved efficiencies in the Company's media network.

Interest expense was $0.6 million in the third quarter of 2009, a decrease of 88.9% compared to $5.7 million in the third quarter of 2008 and relatively unchanged from the second quarter of 2009. The year-over-year decrease was primarily due to $5.0 million of amortization of convertible note discount incurred in the third quarter of 2008.

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

In the third quarter of 2009, the Company recorded a tax expense of $1.6 million representing an effective tax rate of 32.7%.

Net income for the third quarter of 2009 was $3.2 million, compared to a loss of $3.5 million in the third quarter of 2008, and a decrease of 33.8% from $4.9 million in the second quarter of 2009. Net income excluding share-based compensation expenses, non-recurring interest expense incurred prior to the conversion of certain promissory notes and changes in fair value of warrant liabilities, legal and other professional services expenses related to the Ideation transaction and amortization of intangible assets (non-GAAP), was $6.8 million for the third quarter of 2009, an increase of 4.7% from $6.5 million in the third quarter of 2008 and an increase of 10.0% compared to the second quarter of 2009.

As of September 30, 2009, cash and cash equivalents were $6.4 million, representing an increase of 46.1% compared to $4.4 million as of June 30, 2009. Net cash generated from operating activities was $1.6 million for the three-month period ended September 30, 2009.

After giving effect to the $34.7 million earnout payment made upon the closing of the transaction with Ideation, the remaining earnout payment due to the companies SearchMedia acquired prior to its acquisition by Ideation is approximately $70 million, payable over the next 18 months. SearchMedia has the right to pay approximately 50% of the earnout in stock at its discretion.

Business Outlook

Ms. Garbo Lee stated, "While we are pleased with our ability to improve our profitability in the third quarter of 2009, the advertising market continued to be very challenging in 2009. Traditional billboard continues to perform well with occupancy currently over 90%. *However, revenue for our in-elevator business is performing below our expectations due to increased competition and the challenging ad market. We continue to reduce our elevator network by exiting less lucrative and unprofitable locations, resulting in margin improvement. While we expect our traditional outdoor billboard and*

*subway businesses to remain stable, we anticipate revenue in the fourth quarter of 2009 will be down sequentially, primarily due to the rationalization of our in-elevator business. We remain focused on implementing our strategy whereby our media site selection and advertising sales teams will become more integrated in every city. While this integration may require up to two quarters to implement fully throughout our nationwide network, we believe that this initiative will eventually result in a better quality elevator portfolio, higher occupancy rates, and improved profitability and cash flow."*

(Emphasis added).

40.     On this news, SearchMedia's stock fell $0.55 per share, or nearly 6.5%, to close on December 23, 2009, at $7.95 per share, on unusually heavy trading volume.

41.     On March 31, 2010, the Company issued a press release entitled, "SearchMedia to File Form 12b-25 Related to Form 10-K Filing." Therein, the Company, in relevant part, stated:

SHANGHAI, CHINA--(Marketwire - 03/31/10) - SearchMedia Holdings Limited ("SearchMedia" or the "Company") (AMEX:IDI - News) (AMEX:IDI.WS - News), one of China's leading nationwide multi-platform media companies, intends to file a Form 12b-25 with the Securities and Exchange Commission on April 1, 2010, to delay the filing of its Annual Report on Form 10-K for the year ended December 31, 2009.

*SearchMedia's review of 2009 financial results is taking longer than anticipated as the Company is assessing the materiality of certain uncollectible accounts receivable related to sales generated primarily in the in-elevator business, which the Company believes will likely result in significant adjustments from previously disclosed estimated*

*financial results for 2009. The Company has begun discussions with several of the original SearchMedia shareholders to address appropriate remedies, which may include cancellation of some of the shares issued in the Share Exchange Agreement. In completing the 2009 financial results, the Company also needs additional time to complete its review of the reverse capitalization structure and other matters which are still being reviewed.*

Paul Conway, Chief Executive Officer of SearchMedia, stated, *"During the preparation of our 2009 year-end financial statements, we determined that some of the accounts receivable primarily related to the in-elevator business may not be collectible. This could materially impact our revenue and net income for 2009, and as such, we believe it is prudent that we extend our financial audit beyond the March 31, 2010 filing deadline for our Fiscal Year 2009 annual report. We expect to release our 2009 year-end financial results by April 15th, 2010.*

*Conway continued, "While this situation is disappointing, our senior team, including myself and other recent strategic hires, have quickly and significantly enhanced our internal controls and processes. New staff at our in-elevator business has helped to rationalize the operations and resume growth.* Our billboard and subway business remains strong and we continue to build our revenue base and expand our presence in China through new concessions which will increase profitability in 2010. The Company has also made significant progress on new organic and acquisition growth opportunities, in addition to entering into new long-term agreements with management of our operating subsidiaries to enhance the long term growth of our company."

The complete and final results of the Company's assessment of its internal controls and financial results will be disclosed in its Annual Report on Form 10-K for the year ended December 31, 2009.

(Emphasis added).

42.     On this news, SearchMedia's stock fell $0.41 per share, or approximately

---

8.7%, to close on April 1, 2010, at $4.30 per share, on unusually heavy trading volume.

43.    On April 16, 2010, the Company issued a press release entitled, "SearchMedia Provides Preliminary Full Year 2009 Unaudited Financial Results and Operational Update." Therein, Searchmedia, in relevant part, stated:

> Provides Preliminary Revenue and Net Income for 2009 and Financial Guidance for 2010
>
> Live Conference Call to Be Held on Monday, April 19, 2010 at 8:00 AM U.S. Eastern Time
>
> SHANGHAI, CHINA--(Marketwire - 04/16/10) - SearchMedia Holdings Limited ("SearchMedia" or the "Company") (AMEX:IDI - News) (AMEX:IDI.WS - News), one of China's leading nationwide multi-platform media companies, today provided an operational update and preliminary unaudited financial results for the full year 2009. The Company also provided financial guidance for the full year 2010.
>
> Rob Fried, Co-Chairman of the Board of Directors of SearchMedia, commented, "Following the completion of the SPAC transaction, *we discovered operational and other issues primarily relating to the Shanghai Jingli Advertising Company Limited ("Jingli") in-elevator division of the Company. In response, we quickly brought new, reliable senior management to the Company and worked to assess the depth and magnitude of the issues. In accordance with our findings, we may reverse approximately $16 to $18 million of revenues previously reported for the first nine months of 2009, which could not be substantiated in our year-end review. We have also made other important changes, including restructuring the in-elevator division personnel and management processes to enhance stability, revenue collectability and business transparency going forward."*

Paul Conway, Chief Executive Officer of SearchMedia, remarked, "Despite the issues caused under prior management, we still have been able to realize significant progress in our new business development efforts thus far in 2010. We have several transactions in progress that will better align interests between subsidiaries and shareholders, create additional long-term revenue opportunities, strengthen and diversify our service suite in China's media sector, and enhance our national presence through accretive transactions. We intend to keep our investors up to date and make additional announcements as these endeavors evolve. Importantly, our outdoor billboard and transit businesses were strong in the first quarter of 2010, and we believe the prospects for 2010 and beyond are excellent."

Preliminary Unaudited Financial Results and Other Matters

Today, the Company is providing preliminary unaudited financial results for the full year 2009, which reflect the impact of a potential significant revenue reversal and other extraordinary items primarily related to the Company's business conducted through Jingli.

*For the full year 2009, the Company anticipates $64 to $66 million in revenue, after giving effect to the aforementioned $16 to $18 million revenue reversal. The Company's operating profit and net income were significantly impacted because, despite the reversal, the Company was obligated to recognize the associated costs of revenues and operating expenses in full. Assuming the effect of the revenue reversal, but before additional bad debt reserve and a write-off of fixed assets and under-accrued liabilities discussed below, the Company estimates operating profit to be approximately $1 to $3 million and net loss to be approximately $6 to $8 million.*

Based on currently available estimates, the Company expects to provide for a $7 million additional bad debt reserve for sales primarily generated prior to 2009 and to write off $6 million of fixed assets and other assets and under-accrued liabilities. The effect of these extraordinary charges and adjustments is to decrease the Company's estimated results of operations to an operating loss of $10 to $12 million and to increase its

estimated net loss to approximately $19 to $21 million.

As of December 31, 2009, the Company had approximately $30 million in cash and cash equivalents, and approximately 20.7 million common shares outstanding.

Excluding allocation of corporate overhead and the entire Jingli business, where most of the revenue reversal and extraordinary items occurred, SearchMedia believes it generated approximately $54 to $56 million in revenue and $15 to $16 million in net income for the full year 2009 from its other operating subsidiaries. These results reflect strong revenue performance and profitability at the Company's subsidiaries.

Wilfred Chow, Chief Financial Officer of SearchMedia, stated, "We are aggressively pursuing collection of receivables across the Company, even including those deemed uncollectible in 2009. Additionally, we provided our preliminary 2009 financial results excluding the Jingli business and allocation of corporate overhead to facilitate an accurate understanding of our subsidiary operations."

Chow continued, "Also note that as of the market close on April 14, 2010, SearchMedia had approximately 22 million fully diluted shares outstanding, and this is before any potential cancellation of shares from the Share Exchange Agreement that we are currently pursuing."

*Paul Conway continued, "We believe lack of oversight, inadequate customer approval procedures, staff turnover and poor record keeping under prior management in 2009, among other things, led to a high receivables risk. In the past few months, we took steps to dramatically tighten internal controls and vigorously pursue the collection of receivables. As a result of potential misrepresentations related to the business, we continue to pursue all legal remedies available to the Company and we are continuing discussions with several of the original SearchMedia shareholders to address potential remedies, including cancellation of some of the shares issued in the Share Exchange Agreement."*

*Previously, the Company had received anonymous letters claiming fraudulent activities at its operation in China. In connection with these letters, a special committee of the SearchMedia board of directors engaged independent counsel and forensic accountants to assist it conducting an extensive investigation into the claims made in these anonymous letters. As of the date of this release, the investigation has been substantially completed and management has implemented many remedial actions, including those discussed below, to strengthen internal controls and procedures and to address some of the issues identified during the investigation.*

In the first quarter of 2010, SearchMedia began implementing many operational improvements including but not limited to the following:

*-- Enhancing the senior management team with the hiring of a new CEO and CFO and the addition of in-house corporate counsel;*

*-- Strengthening the finance and accounting function with the addition of a Vice President of Finance and a focus on better utilization of accounting systems between the parent company and subsidiaries;*

*-- Restructuring of the in-elevator business, including management changes and rationalization of underperforming branch offices; and*

*-- Improving the Company's future ability to collect revenue for services rendered by linking sales commissions to accounts receivable collection, mandating a customer validation and approval process, requiring an internal contract review process, conducting systematic bad debt reviews between sales and accounting teams, and strengthening documentation of services rendered.*

Transactional Update and Business Development Efforts

In addition to the aforementioned operational improvements, SearchMedia also achieved notable progress in solidifying long-term revenue opportunities, strengthening its service suite in China's media

---

sector and taking steps to enhance its national presence through a pending, accretive acquisition. More specifically, SearchMedia recently:

-- Entered into multi-year agreements with management of three of SearchMedia's largest subsidiaries, which, among other things, incentivizes the teams to focus on long-term operational and performance goals. SearchMedia believes these agreements better align interests between subsidiaries, the parent company and shareholders. The Company is also in active discussion with management of its other operating subsidiaries for similar arrangements;

-- Signed a new one year cooperation agreement with a leading outdoor media company to provide bus advertisements, which further expands the Company's media portfolio and its ability to provide a one-stop-shop for clients; and

-- Entered into an agreement to acquire a profitable billboard company located in one of the most affluent cities in China. The acquisition is expected to close by the end of the second quarter of 2010 and strengthens SearchMedia's competitive position. The target has a long history of operations in China and has an established presence in one of the most desirable markets in the country. Through this acquisition, the Company will enhance its ability to support and deliver broader, more comprehensive national sales campaigns. The transaction is subject to final government approval.

Conway added, "These operational achievements demonstrate our commitment and ability to facilitate the long-term growth of SearchMedia. General order demand in both our billboard and subway businesses remains solid for 2010, and we are already seeing improvements in our in-elevator operations. We are placing strong emphasis on maximizing our overall margin performance and the expansion of our media portfolio. With these goals in mind, we have modified agreements with management at our operating subsidiaries and structured the terms of the pending acquisition so that the incentives are best aligned with SearchMedia's and its shareholders' interests. As we continue to expand our media portfolio and geographic presence, we

hope to further expand our network for national sales campaigns while also building a more comprehensive one-stop-shop for our clients.

"Importantly, we remain confident in our ability to further SearchMedia's growth. As of today, we are estimating revenue of approximately $85 million in 2010 and net income of approximately $18 million. This is up substantially from the results we announced today, driven by continued organic growth across our media platforms, geographic expansion, and select potential new concessions and acquisitions," said Conway.

Timing of 10K Filing

The Company believes that it cannot complete the disclosure necessary for its Annual Report on Form 10-K within the extended filing deadline of April 15, 2010. The Company intends to file its Annual Report on Form 10-K by May 17, 2010. The preliminary financial results presented above are subject to the final resolution of the operational issues described above and completion of the audit by the Company's independent auditors. Accordingly, the audited results presented in the Company's Annual Report on Form 10-K may differ materially from these preliminary results.

Mr. Chow concluded, "We appreciate the patience of our stockholders as we work to complete our financial reporting process. As the Company is continuing to fully assess the extent of the financial impact of the operational and other issues discovered during the year-end review, we believe that it is prudent to further delay our filing until we fully complete our review. Furthermore, we believe our decision to conduct a thorough and diligent review now will allow us to provide shareholders with more accurate and consistent information going forward."

(Emphasis added).

44.    On May 13, 2010, the Company issued a press release entitled,

"SearchMedia Hires Bernstein & Pinchuk as Independent Auditor." Therein, the

Company, in relevant part, stated:

> Shanghai, China, May 13, 2010 — SearchMedia Holdings Limited ("SearchMedia" or the "Company") (NYSE Amex: IDI, IDI.WS), one of China's leading nationwide multi-platform media companies, announced today that the Audit Committee of its Board of Directors approved the engagement of Bernstein & Pinchuk LLP, a independent member of the BDO Seidman LLP alliance as the Company's independent registered public accounting firm effective May 12, 2010. Bernstein & Pinchuk replaces the Company's former independent auditor, KPMG, which resigned on May 7, 2010. The resignation was not due to any dispute between KPMG and the Company. In addition, KPMG's report on the consolidated financial statements of SearchMedia International Limited for the fiscal year ended December 31, 2008 did not contain an adverse opinion nor a disclaimer of opinion and was not qualified or modified as to uncertainty, audit scope or accounting principles.
>
> Speaking about the appointment, Mr. Paul Conway, CEO of SearchMedia, stated, "With a dedicated team on the ground in China able to work closely with our management team, we believe Bernstein & Pinchuk is a strong complement to our business, our size and the scope of our needs at this current time."
>
> Bernstein & Pinchuk, an independent member of the BDO Seidman LLP alliance, provides a full range of audit and assurance, tax and transaction advisory services for clients in a variety of industries throughout the world. With offices in New York, Beijing, Guangzhou, and Hangzhou, Bernstein & Pinchuk provides the expertise, cultural understanding and support needed to efficiently serve and advise clients.
>
> At this time, the Company believes that it cannot complete the disclosure necessary for its 2009 Annual Report on Form 10-K by May 17, 2010. The Company intends to file its Annual Report on Form 10-K no later than July 21, 2010.

45.    On May 24, 2010, the Company issued a press release entitled,

"SearchMedia Announces First Quarter 2010 Preliminary Unaudited Financial

Results." Therein, SearchMedia, in relevant part, stated:

> SHANGHAI, CHINA--(Marketwire - 05/24/10) - SearchMedia
> Holdings Limited ("SearchMedia" or the "Company") (AMEX:IDI -
> News) (AMEX:IDI.WS - News), one of China's leading nationwide
> multi-platform media companies, today provided preliminary unaudited
> financial results for the first quarter 2010 and an operational update.
>
> Paul Conway, Chief Executive Officer, commented, "We are pleased
> with the progress that we made in the 2010 first quarter and into the
> 2010 second quarter. Because of the operational issues discovered
> earlier in the year, we continue to work towards finalization of our
> financial statements and filing of our 2009 Form 10-K and 2010 first
> quarter Form 10-Q, while we focus on growing the business in a prudent
> manner. On May 5, 2010, we submitted our plan of compliance to the
> NYSE Amex for their review with the goal of filing our 2009 Form
> 10-K within the NYSE Amex compliance deadline of July 21, 2010.
>
> "We have several transactions in progress that will create additional
> long-term revenue opportunities, diversify our service suite in China's
> media sector, and enhance our national presence. The previously
> announced acquisition of another profitable billboard company
> continues to work its way through the government approval process and
> we expect it to close in the 2010 second quarter. We also signed a
> one-year cooperation agreement to provide bus advertisements which
> will begin delivering revenue contribution in the 2010 second quarter.
> Our pipeline for significant new concession and acquisition
> opportunities continues to grow. We intend to continue to pursue
> accretive opportunities in China's growing outdoor advertising sector as
> we look for additional means to enhance our revenues, reduce costs and
> increase profitability.
>
> "In addition, we have entered into multi-year agreements with two

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

additional subsidiaries for a total of five this year which provide further incentives to subsidiary management to focus on long-term performance goals. We have made progress with management of our other subsidiaries for similar arrangements, as well."

Preliminary Unaudited Financial Results

For the 2010 first quarter, the Company anticipates $13 million in revenue and approximately $1 million in net income.

Revenue was driven primarily by our existing billboard and transit businesses. Revenue in the 2010 first quarter did not benefit from our announced billboard acquisition or new bus concession.

Net income was driven by continued profitability of our billboard and transit businesses, which was partially offset by losses from the Shanghai Jingli in-elevator business and corporate overhead costs.

As of March 31, 2010, the Company had approximately $22 million in cash and cash equivalents, and approximately 20.7 million basic common shares outstanding. During the first quarter, cash of approximately $4 million was utilized as part of the previously announced share and warrant buyback program.

For comparative purposes, the Company intends to release 2009 quarter by quarter results in its Annual Report on Form 10-K.

Speaking about the preliminary financial results, Wilfred Chow, Chief Financial Officer said, "The Company was able to deliver positive net income during the 2010 first quarter in spite of the usual seasonality in the industry where the first quarter is traditionally the slowest quarter of the year. Net income was achieved through tighter cost controls, the Shanghai Jingli elevator business operating at a lower loss when compared with last year and no significant financial write-offs in the first quarter of 2010."

Paul Conway continued, "Our business was profitable in the 2010 first

---

quarter, however, there were two primary items that adversely affected the revenue performance of the overall company. ***The Company's Shanghai Jingli in-elevator business experienced a bottoming-out during the first quarter of 2010 due to the restructuring effort we implemented at the business and stricter credit procedures prior to accepting new clients. We believe the scalability of the in-elevator business remains an attractive growth prospect and expect the business to become profitable in the 2010 third quarter. Also, one of our subsidiaries had some delays in certain advertising campaigns which resulted in the recognition of these revenues in the 2010 second quarter.***

"Our outdoor billboard and transit businesses remain solid, with our subsidiaries delivering approximately $3 million in net income in the first quarter, which excludes Shanghai Jingli and corporate expenses. We remain confident of the growth prospects of our businesses for the full year. Furthermore, during the course of the second quarter we have seen greater deployment of 2010 advertising budgets from our clients.

"With the anticipated business developments including new contracts, additional concessions and expected acquisition closings we remain confident in our ability to achieve revenue of approximately $85 million and net income of approximately $18 million for the full year 2010."

(Emphasis added).

46.   The statements contained in ¶¶39, 41, 43-45, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that SMIL was improperly recognizing revenue; (2) that, as a result, SMIL's financial results were overstated; (3) that SMIL's financial results were not prepared in accordance with GAAP; (4) that SMIL lacked adequate internal and financial controls; and (5) as a result of the above, SMIL's financial statements were

materially false and misleading at all relevant times.

**Disclosures at the End of the Class Period**

47.    Then, on August 20, 2010, SearchMedia issued a press release titled, "SearchMedia Releases Second Quarter 2010 Preliminary Unaudited Financial Results." Therein, the Company, in relevant part, stated:

Intention to Restate 2007 and 2008 Financials

Wilfred Chow, Chief Financial Officer of SearchMedia, stated, "As a result of our continued internal analysis of our financial statements for the year ended December 31, 2009, based on management's recommendation, the Audit Committee has concluded that the historical financial statements of SearchMedia International Limited for the 2007 and 2008 fiscal years should be restated and that the financial statements from these periods can no longer be relied upon. *We estimate that revenue in 2007 and 2008 was overstated by approximately $6 million and $25 million, respectively, and we are still evaluating the impact to reported net income during those periods*. At this time, we expect the 2007 and 2008 restatements to have a positive effect on the previously reported unaudited net income for the year ended December 31, 2009 and for the quarter ended March 31, 2010.

Conway commented, "In connection with our Plan of Compliance with the NYSE/AMEX that was accepted in June 2010, the NYSE/AMEX granted the Company an extension to file its Form 10-K for the year ended December 31, 2009 until August 31, 2010. While we continue to endeavor to file our Form 10-K on or prior to August 31, 2010, it is unlikely that we will meet this deadline due to the restatement of the 2007 and 2008 financial statements of SearchMedia International Limited. We have submitted a request to the NYSE/AMEX for an additional extension and are awaiting their decision. *We remain fully committed to bringing the Company into compliance with Sections 134 and 101 of the NYSE Amex LLC Company Guide.*" Conway

*continued, "Since the new management team began working at SearchMedia Holdings earlier this year, we have made significant progress implementing remedial actions to strengthen our internal controls and procedures. We continue to actively address some of the issues identified during the previously reported special committee's investigation and management's further analysis, including strengthening the Company's management, finance and accounting functions, restructuring the in-elevator business, and improving the Company's accounts receivable and documentation control systems. We continue to pursue all remedies available to the Company, including legal remedies and potential cancellation of some of the shares issued in the Share Exchange Agreement.* As of today, there are approximately 22 million fully diluted shares outstanding, of which approximately 9 million were issued to the pre-merger shareholders."

(Emphasis added).

48.     On this news, SearchMedia's stock fell $0.78 per share, or nealy 23%, to close on August 20, 2010, at $2.62 per share on unusually heavy trading volume, and further declined an additional $0.92 per share, more than 35%, to close on August 23, 2010, at $1.70 per share, again on unusually heavy trading volume. Over the course of these two days of trading, SearchMedia's stock declined a combined $1.70 per share, or 50%, from the closing price of $3.40 per share on August 19, 2010.

## SEARCHMEDIA'S VIOLATION OF GAAP RULES
## IN ITS FINANCIAL STATEMENTS
## FILED WITH THE SEC

49.     These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not

---

prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's revenue recognition and accounting in violation of GAAP rules.

50. GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

51. The fact that SearchMedia has announced that it intends to restate its financial statements, and informed investors that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No.20, 7-13; SFAS No. 154, 25).

52. Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a) The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial

statements" was violated (APB No. 28, 10);

        (b)    The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

        (c)    The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

        (d)    The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

        (e)    The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

        (f)    The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g)     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h)     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

53.    The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## CLASS ACTION ALLEGATIONS

54.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons or entities who purchased or otherwise acquired SearchMedia securities between April 1, 2009 and August 20, 2010, inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.    The members of the Class are so numerous that joinder of all members

is impracticable. Throughout the Class Period, SearchMedia (f/k/a Ideation), securities were actively traded on the NYSE Amex ("AMEX"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of SearchMedia shares were traded publicly during the Class Period on the AMEX. Record owners and other members of the Class may be identified from records maintained by SearchMedia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants'

acts as alleged herein;

(b)     Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the operations, financial performance and prospects of SearchMedia; and

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

60.     The market for SearchMedia securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, SearchMedia securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired SearchMedia securities relying upon the integrity of the market price of the Company's securities and market information relating to

SearchMedia, and have been damaged thereby.

61.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of SearchMedia securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about SearchMedia's business, operations, and prospects as alleged herein.

62.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about SearchMedia's financial performance and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the

Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

63.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

64.     During the Class Period, Plaintiff and the Class purchased SearchMedia securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors's losses.

## SCIENTER ALLEGATIONS

65.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding SearchMedia, his/her control over, and/or receipt

and/or modification of SearchMedia's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SearchMedia, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

66.    The market for SearchMedia securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, SearchMedia securities traded at artificially inflated prices during the Class Period.    Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of SearchMedia securities and market information relating to SearchMedia, and have been damaged thereby.

67.    During the Class Period, the artificial inflation of SearchMedia stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about SearchMedia's financial performance and prospects.  These material misstatements

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS .

47

and/or omissions created an unrealistically positive assessment of SearchMedia and its business, operations, and financial performance, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

68. At all relevant times, the market for SearchMedia securities was an efficient market for the following reasons, among others:

(a) SearchMedia stock met the requirements for listing, and was listed and actively traded on the AMEX, a highly efficient and automated market;

(b) As a regulated issuer, SearchMedia filed periodic public reports with the SEC and the AMEX;

(c) SearchMedia regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) SearchMedia was followed by securities analysts employed by

major brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

69.   As a result of the foregoing, the market for SearchMedia securities promptly digested current information regarding SearchMedia from all publicly available sources and reflected such information in SearchMedia's stock price. Under these circumstances, all purchasers of SearchMedia securities during the Class Period suffered similar injury through their purchase of SearchMedia securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

70.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the

alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of SearchMedia who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

71.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase SearchMedia securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

73.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SearchMedia securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

74.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about SearchMedia's financial well-being and prospects, as specified herein.

75.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SearchMedia's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the

statements made about SearchMedia and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

76.   Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

77.    The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SearchMedia's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

78.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of SearchMedia securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities

trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired SearchMedia securities during the Class Period at artificially high prices and were damaged thereby.

79.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Company's improper accounting practices, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SearchMedia securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

80.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

82.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

83.     The Individual Defendants acted as controlling persons of SearchMedia within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed

to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

85.     As set forth above, SearchMedia and the Individual Defendants each violated either Section 10(b) and Rule 10b-5, by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: September 13, 2010     **GLANCY BINKOW & GOLDBERG LLP**


By: _____
        Lionel Z. Glancy
        Michael Goldberg
        Robert V. Prongay
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160


Howard G. Smith
**LAW OFFICES OF HOWARD G. SMITH**
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867


*Attorneys for Plaintiff Sid Murdeshwar*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**SWORN CERTIFICATION OF PLAINTIFF**

SearchMedia Holdings Limited, **SECURITIES LITIGATION**

I, Sid Murdeshwar, certify that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase SearchMedia Holdings Limited, the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in SearchMedia Holdings Limited, Inc. during the class period set forth in the Complaint are as follows:

    I bought ___910___ shares on _12_/_23_/_2009_ at $ _1.75_ per share.
    I bought _____ shares on ___/___/___ at $ _____ per share.
    I bought _____ shares on ___/___/___ at $ _____ per share.
    I bought _____ shares on ___/___/___ at $ _____ per share.
    I bought _____ shares on ___/___/___ at $ _____ per share.

    I sold _____ shares on ___/___/___ at $ _____ per share.
    I sold _____ shares on ___/___/___ at $ _____ per share.
    I sold _____ shares on ___/___/___ at $ _____ per share.
    I sold _____ shares on ___/___/___ at $ _____ per share.
    I sold _____ shares on ___/___/___ at $ _____ per share.

    (List Additional Transactions on a Separate Page if Necessary)

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ___ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _9/1/10_

_____
(Please Sign Your Name Above)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV10- 6794 DSF (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

ORIGINAL



Name & Address:
Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SID MURDESHWAR, Individually and on Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>SEARCHMEDIA HOLDINGS LIMITED, f/k/a IDEATION ACQUISITION CORP., [See Attachment for Additional Defendants]<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10- 6794 DSf (JEMx)**<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): Searchmedia Holdings Limited, f/k/a Ideation Acquisition Corp., Robert N. Fried, Phillip Frost, Rao Uppaluri, Steven D. Rubin,  [Continued on Exhibit "B" Attached Hereto]

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Michael Goldberg _____, whose address is 1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, Tel: (310) 201-9150 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  SEP 1 3 2010   By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SID MURDESHWAR, Individually and on Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>SEARCHMEDIA HOLDINGS LIMITED, f/k/a IDEATION ACQUISITION CORP., [See Attachment for Additional Defendants]<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV10-6794 DSF (JEMx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): <u>Searchmedia Holdings Limited, f/k/a Ideation Acquisition Corp., Robert N. Fried,</u>
    <u>Phillip Frost, Rao Uppaluri, Steven D. Rubin,  [Continued on Exhibit "B" Attached Hereto]</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>Michael Goldberg</u>, whose address is <u>1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, Tel: (310) 201-9150</u>.   If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___SEP 1 3 2010___

By: ____**SHEA BOURGEOIS**____

Deputy Clerk

(Seal of the Court)

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SID MURDESHWAR, Individually and on Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>SEARCHMEDIA HOLDINGS LIMITED, f/k/a IDEATION ACQUISITION CORP., [See Attachment for Additional Defendants]<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10-6794DSf (JEmx)**<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): Searchmedia Holdings Limited, f/k/a Ideation Acquisition Corp., Robert N. Fried, Phillip Frost, Rao Uppaluri, Steven D. Rubin,  [Continued on Exhibit "B" Attached Hereto]

A lawsuit has been filed against you.

Within  21  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,  Michael Goldberg , whose address is  1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, Tel: (310) 201-9150 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   SEP 1 3 2010

By: _____
**SHEA BOURGEOIS**
Deputy Clerk

(Seal of the Court)
SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                  SUMMONS

1

SUMMONS [CONTINUED]

2

3

[Attachment of Additional Defendants]

4

5

ROBERT N. FRIED, PHILLIP FROST, RAO UPPALURI, STEVEN D. RUBIN,
GLENN HALPRYN, THOMAS E. BEIER, DAVID H. MOSKOWITZ, SHAWN

6

GOLD, GARBO LEE, PAUL CONWAY, QINYING LIU, EARL YEN AND
JENNIFER HUANG

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

EXHIBIT "B" TO SUMMONS

2

3

[TO DEFENDANTS (CONTINUED)]

4

5
GLENN HALPRYN, THOMAS E. BEIER, DAVID H. MOSKOWITZ, SHAWN
GOLD, GARBO LEE, PAUL CONWAY, QINYING LIU, EARL YEN AND
6
JENNIFER HUANG

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| SID MURDESHWAR, Individually and on Behalf of All Others Similarly Situated | SEARCHMEADIA HOLDINGS LIMITED, f/k/a IDEATION ACQUISITION CORP., [See Exhibit "A" attached hereto for additional Defendants] |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| MICHAEL GOLDBERG (SBN 188669) <br> GLANCY BINKOW & GOLDBERG LLP <br> 1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067 T: (310) 201-9150 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ To be Proved

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Section 10(b) of The Exchange Act & Rule 10b-5; Violation of Section 20(a) of The Exchange Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☒ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |

**CV10-6794**

FOR OFFICE USE ONLY: Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Plaintiff Sid Murdeshwar - Nassau County, New York |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Searchmedia Holdings Limited, f/k/a Ideation Acquisition Corp., Garbo Lee, Paul Conway, Qinying Liu, Earl Yen, Jennifer Huang, Robert N. Fried, Phillip Frost, Rao Uppaluri,  - China [See Exhibit B for Additional Defendants] |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date September 13, 2010

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

EXHIBIT "A" TO CIVIL COVER SHEET

[LIST OF DEFENDANTS - CONTINUED]

ROBERT N. FRIED, PHILLIP FROST, RAO UPPALURI, STEVEN D. RUBIN, GLENN HALPRYN, THOMAS E. BEIER, DAVID H. MOSKOWITZ, SHAWN GOLD, GARBO LEE, PAUL CONWAY, QINYING LIU, EARL YEN AND JENNIFER HUANG

1

EXHIBIT "B" TO CIVIL COVER SHEET

2

3

[LIST OF DEFENDANTS AND COUNTY OF RESIDENCE- CONTINUED]

4

5

DAVID H. MOSKOWITZ SHAWN GOLD, GLENN HALPRYN, THOMAS E.
BEIER STEVEN D. RUBIN - CHINA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28