UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SID MURDESHWAR, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SEARCHMEDIA HOLDINGS LTD., *et al.*,<br><br>　　　　　　　　Defendants. | Case No.: 1:11-cv-20549-KMW |

**LEAD PLAINTIFF'S MOTION FOR
PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND
<u>INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u>**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Noel Upfall ("Lead Plaintiff") respectfully submits this motion for preliminary approval of partial settlement of $2,750,000 reached with Settling Defendants SearchMedia Holdings Limited, Robert Fried, Phillip Frost, Rao Uppaluri, Steven Rubin, Glenn Halpryn, Thomas Beier, David Moskowitz, and Shawn Gold.

**MEMORANDUM OF LAW**

**I.   INTRODUCTION**

Lead Counsel and Settling Defendants' Counsel have negotiated, at arms-length and with the assistance of an experienced mediator, a proposed Settlement of all claims asserted on behalf of class Members who (i) purchased or otherwise acquired SearchMedia or Ideation securities between April 1, 2009 and August 20, 2010, inclusive; or (ii) held common stock of Ideation on October 2, 2009, and were eligible to vote at Ideation's October 27, 2009, special meeting. In accordance with the proposed Plan of Allocation, the Partial Settlement will enable the Class to recover $2.75 million in cash in exchange for the dismissal of all claims against the Settling Defendants in this action and certain releases. Lead Counsel is fully informed of the strengths and weaknesses of this action. Lead Counsel also appreciates the complex and highly uncertain nature of trying this action before a jury, complicated even further by the Chinese domicile of important fact witnesses, and anticipates that they would face significant hurdles in establishing liability and damages if it were to proceed to trial. Of course, even if the plaintiff Class were to prevail at trial, the Settling Defendants would likely appeal any favorable judgment, delaying and possibly jeopardizing any recovery. Lead Counsel fully endorses and respectfully recommends the proposed partial Settlement as it is in the bests interests of the Class.

The proposed Settlement is contained in the executed Stipulation and Agreement of Settlement dated November 30, 2011 ("Stipulation"). The Stipulation includes several exhibits, including:

- Exhibit A, Notice of Pendency of Class Action and Proposed Partial Settlement and Motion for Fairness Hearing and Award of Attorneys' Fees and Expenses ("Notice"). The Notice contains the proposed Plan of Allocation ("Plan of Allocation") and Proof of Claim and Release form ("Proof of Claim");

- Exhibit B, Postcard Notice of Pendency of Class Action and Proposed Partial Settlement and Motion for Fairness Hearing and Award of Attorneys' Fees and Expenses ("Postcard Notice");

- Exhibit C, the Summary Notice of Pendency of Class Action and Proposed Partial Settlement and Motion for Fairness Hearing and Award of Attorneys' Fees and Expenses ("Summary Notice"); and

- Exhibit D, the Order Preliminarily Approving Partial Settlement and Providing for Notice of Settlement ("Preliminary Order"); and

- Exhibit E, the Order and Final Judgment Approving Partial Settlement and Dismissing the Action with Prejudice ("Order and Final Judgment").

Lead Counsel seeks entry of the proposed Preliminary Order, which (1) preliminarily approves the proposed Settlement, including the Plan of Allocation; (2) approves the form and manner of giving notice of the proposed Settlement to the Class by means of the Notice, Postcard Notice and Summary Notice; and (3) sets a hearing date for final approval of the Settlement ("Fairness Hearing"), along with a schedule for various deadlines relevant to the Fairness Hearing. These deadlines include mailing the Postcard Notice and publishing the Summary Notice, the submission of all objections or requests for exclusion, and the submission of Proofs of Claim.

As discussed in detail below, based on their evaluation of the facts and governing law and their recognition of the substantial risks of continued litigation, Lead Plaintiff and Lead Counsel submit that the Partial Settlement is in the best interests of the Class by providing an immediate

meaningful recovery for the Class. Accordingly, Lead Plaintiff respectfully moves for, and submits this memorandum in support of, this Court's preliminary approval of the Partial Settlement.

## II. THE PARTIAL SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

### A. Factors to be Considered by the Court in the Preliminary Approval of a Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires court approval of any proposed class settlement in a class-action context. Fed. R. Civ. Pr. 23(e); *In re Sunbeam Securities Litigation*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (citing *Piambino v. Bailey*, 757 F.2d 1112, 1139-42 (11th Cir. 1985)). The decision of whether to approve a proposed settlement is within the discretion of the court, and the court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 537 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits."). Settlements of large and complex cases particularly warrant this judicial approach:

> This policy has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice, for a just result is often no more than an arbitrary point between competing notions of reasonableness.

*Behrens*, 118 F.R.D. at 538 (internal citations and quotations omitted). *See also In re Sunbeam*, 176 F. Supp. 2d at 1329. Indeed, the promotion of fair, adequate, and reasonable settlements is a fundamental tenet of litigation in the federal courts. *See, e.g., McDermott, Inc. v. Amclyde*, 511 U.S. 202, 211 (1994). There is a strong initial presumption that the compromise is fair and

reasonable. *Hernandez v. Tropical Const. & Maintenance Corp.*, 2007 WL 1201143 (M.D. Fla., April 23, 2007); *Ferguson v. Upscale Saturday Night, Inc.*, 2007 WL 2774196 (M.D. Fla., September 6, 2007).

Approval of a class action settlement is a two-step process. "First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel. Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). In determining whether to approve a proposed settlement, "the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).[1]

Preliminary approval of a class action settlement does not require the court to make a *final* determination that the settlement is fair, adequate, and reasonable; that decision is made only at the final approval stage, after notice of the settlement is provided to class members and they have had an opportunity to voice their views or to exclude themselves from the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice,* 23.83[1], at 23-336.2 to 23-339 (3d ed. 2001). The court should simply factor in whether there is a probability that the settlement could be finally approved, and "determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Carnegie v. Household Int'l, Inc.*, 371 F. Supp. 2d 954, 955 (N.D. Ill. 2005).

---

[1] The Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit prior to 1981 in *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207, 1209 (11th Cir. 1981).

Second, "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, [and it] appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing . . ." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) (citing Newberg on Class Actions at § 11.25).  Therefore, at this stage, the sole issue before the Court is whether the Partial Settlement is within the range of what could be found to be fair, adequate, and reasonable, so that notice should be given to the proposed Class, and a hearing scheduled to consider final approval.

Here, as detailed below, the proposed Partial Settlement satisfies the standard for preliminary approval as it is within the range of possible approval and there are no grounds to doubt its fairness or adequacy. The indicia of procedural fairness are present here, including arm's-length negotiations by competent counsel overseen by an experienced and well-respected mediator. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure")  In fact, significant hurdles (including the motion for class certification and dispositive motions) await Lead Plaintiff and the Class but for the proposed Partial Settlement.  Lead Plaintiff believes that the Partial Settlement is fair and in the best interests of the settlement Class.  Therefore, Lead Plaintiff submits that the foregoing factors support preliminary approval of the Partial Settlement.

### B.  The Proposed Partial Settlement is Fair and Warrants the Court's Preliminary Approval

The Eleventh Circuit has identified six factors that district courts should consider in determining whether a settlement if fair, reasonable, and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring*, 737 F. 2d 982, 986 (11th Cir. 1984). With respect to the substance and amount of opposition to the settlement, Class Members have not yet had the opportunity to review the terms of the Partial Settlement. Therefore, Lead Counsel will advise the Court of the Class Members' reaction to the settlement following completion of the notice process, as part of the analysis presented in support of final approval of the Partial Settlement. A preliminary evaluation of the other considerations demonstrates that the Partial Settlement should receive preliminary approval.

### 1. Lead Plaintiff's Likelihood of Success at Trial

The ability to avoid the risk, uncertainty, expense, complexity, and likely duration of further litigation should be considered by the Court in reviewing this motion. It is widely recognized that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential- Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992) (citations omitted). While Lead Plaintiff was prepared to try this case against Defendants, and remains confident in his ability to ultimately prove his claims, a trial is always a risky proposition. *See Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-2152-CIV-GOLD, 2003 U.S. Dist. LEXIS 27238, at *5 (S.D. Fla. May 30, 2003) ("the risks associated with proceeding to trial in […] complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement."). This risk is particularly apparent in this case, where only Lead Plaintiff's claims under Section 10(b) did not survive the Defendants' motion to dismiss. But even though Lead Plaintiff's Section 14(a) claims ultimately survived the motion to

dismiss, Lead Plaintiff still faces risks in litigating this action to a verdict, which would require that plaintiffs prevail on all matters at class certification, summary judgment, and trial. Lead Plaintiff faces particular risks with respect to proving scienter as to each of the Defendants and the full amount of damages sustained by the Class, as well as the possible difficulty of responding to a negative causation argument by Defendants.

Lead Plaintiff and Lead Counsel recognize the significant risks and uncertainty involved in pursuing Lead Plaintiff's claims through summary judgment, trial, and subsequent appeals. *See, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiff class and granting judgment as a matter of law in favor of defendants); *Robbins v. Kroger Props. Inc.*, 116 F.3d 1441 (11th Cir.), *reh'g en banc denied*, 129 F.3d 617 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 308 (2d Cir. 1979) (reversing $87 million judgment after trial), *cert. denied*, 444 U.S. 1093 (1980). Moreover, Lead Plaintiff and Lead Counsel are mindful of the issues of proof under, and possible defenses to, the violations of securities laws alleged.

Under these circumstances, the Partial Settlement balances the risks, costs, and delay inherent in complex cases evenly with respect to all parties. Thus, the benefits created by the Partial Settlement weigh heavily in favor of granting the motion for preliminary approval. Under the Partial Settlement, Settling Defendants will cause to be paid $2,750,000.00 in exchange for the release of claims against them. Lead Plaintiff respectfully submits that, considering the risks of continued litigation and the time and expense which would be incurred to prosecute the action through a trial, the Partial Settlement represents a meaningful recovery at this time that is indisputably in the best interests of the Class.

### 2. The Range of Possible Recovery; the Point in the Range of Recovery at Which the Settlement is Fair, Adequate, and Reasonable; and the Complexity, Expense, and Duration of Litigation

"Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well-deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Part of that complexity lies in the calculation of damages and determining the range of possible recovery, an issue which generally requires expert testimony and invariably leads to a "battle of the experts" at trial. Here, Lead Plaintiff's experts have calculated damages attributable to alleged drops in the Company's stock to be approximately $16.38 million. The Settling Defendants have denied and continue to deny that the Class suffered any damages at all. Indeed, Lead Plaintiff acknowledges that at trial, recoverable damages could be significantly less if the Court determined that some part of the alleged stock decline was attributable to factors other than the alleged violations of securities laws. The range of possible recovery here is therefore wide and currently indeterminate, a factor which militates in support of a settlement which secures immediate compensation for the Class. Furthermore, this settlement represents nearly 17% recovery for the Class, which Lead Plaintiff respectfully submits is an excellent result in further support of the fairness, reasonableness, and adequacy of the Partial Settlement given that many of Lead Plaintiff's claims have already been dismissed and Lead Plaintiff still faces significant hurdles in the prosecution of this action. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2nd Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Telik, Inc. Securities Litigation*, 576 F.Supp.2d 570, 580 (S.D.N.Y.

2008) (in a case in which plaintiffs face significant challenges, "almost any amount could be deemed reasonable[.]").[2]

Moreover, as a whole, "complexity, expense and duration of the litigation" weigh heavily in favor of approving a settlement. *Bennett*, 737 F.2d at 986. *See Woodward v. Nor-Am Chem. Co.*, No. 94-0780-CB-C, 1996 U.S. Dist. LEXIS 7372, at *61 (S.D. Ala. May 23, 1996) (settlements "alleviate the need for judicial exploration of […] complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing."). Lead Plaintiff's claims involve numerous complex legal and financial issues, including complicated accounting practices such as the application of accounting policies in accordance with Generally Accepted Accounting Principles. The accounting issues alone would require extensive expert discovery and testimony, adding considerably to the complexity, expense, and duration of the action. In addition, the costs and risks associated with litigating this action to a verdict would be high, and the process would require many hours of the Court's time and expend its resources. This process would only be complicated by the fact that important documents and fact witnesses are in China, and therefore beyond the subpoena power of the Court. Clearly, the Partial Settlement enables the Class to swiftly recover a meaningful sum of money in circumstances where it would otherwise not recover for years, if at all.

### 3. The Stage of Proceedings at Which the Settlement Was Achieved

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess

---

[2] The Settlement is nearly double the average recovery in comparable securities fraud class action. *See* Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2010 Review and Analysis*, at 5 (Cornerstone Research 2010) (all settlements as a percentage of estimated damages averaged 2.8% in 2010 and 3.4% from 1996-2009; settlements as a percentage of estimated damages where damages were less than $50 million averaged 10.7% from 1996-2009 and 9.9% in 2010); *see also* Jordan Milev, Robert Patton & Svetlana Starykh, *Trends 2010 Year-End Update: Securities Class Action Filings Accelerate in Second Half of 2010; Median Settlement Value at an All-Time High*, at 25 (NERA 2010) (median ratio of settlements to investor losses was 2.4% in 2010).

evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. At a minimum, the court must possess sufficient information to raise its decision above mere conjecture." Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.45 (3d ed. 1992). *See also Woodward*, 1996 U.S. Dist. LEXIS 7372, at *64. The volume and substance of Lead Plaintiff's knowledge of this action is unquestionably adequate to support the Partial Settlement. Lead Plaintiff has litigated this action for nearly more than a year, passing a significant hurdle by surviving the Settling Defendants' motion to dismiss, and has entered into the Partial Settlement with a clear understanding of the strengths and weaknesses of his claims based on, *inter alia*: (i) translation, review and analysis of SearchMedia's Chinese subsidiaries' regulatory filings with China's SAIC; (ii) review and analysis of the public filings of SearchMedia, including its filings with the SEC; (iii) review and analysis of news articles, press releases, announcements, and analysts' reports by and relating to SearchMedia; (iv) research of the applicable law with respect to the claims asserted in the action and the potential defenses thereto; (v) consultation with damages and economics experts; and (vi) consultation with professional investigators. In addition, Lead Plaintiff became fully aware of the Settling Defendants' factual and legal positions through their motion to dismiss, pleadings, the parties' mediation briefs, and mediation discussions.

### III. THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23(a)

One of the court's duties in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Fed. R. Civ. P. 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). Fed. R. Civ. Pr. 23(a) sets forth four prerequisites to class certification, commonly referred to as: (i) numerosity; (ii) commonality;

(iii) typicality; and (iv) adequacy. In addition, the class must meet one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23.  In general, Courts have followed a "policy of liberal construction of Rule 23 in the context of federal securities fraud actions."  *In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 687, 693 (N.D. Ga. 2002).  This action is no exception, and Lead Plaintiff submits that the Class satisfies each of the requirements as set forth below.

### A. Numerosity

The Class meets the numerosity and commonality standards of Rule 23(a)(1)-(2). First, the number and location of putative class members is such that it is impracticable to join all of the Class Members in one lawsuit.  *See In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 685 (N.D. Ga. 1999) (plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class"). Throughout the Class Period, SearchMedia common stock was actively traded on the American Stock Exchange ("AMEX"), and the Company has reported in their filings with the SEC that there were millions of outstanding shares traded.  Thus, Lead Plaintiff believes the putative class comprises thousands of beneficial holders, which clearly satisfies the numerosity requirement.  *See Theragenics*, 205 F.R.D. at 694 (numerosity is "generally presumed when a claim involves nationally traded securities").

### B. Commonality

Second, commonality is met because substantial questions of law and fact are common to all Class Members (*e.g.*, whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of SearchMedia and whether the Defendants acted knowingly or recklessly in issuing these statements). *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 491 (S.D. Fla. 2003) (finding commonality requirement to be met where, "like many other similar securities cases in this

Circuit," the allegations involved a "unified scheme to defraud investors through misrepresentations and omissions of information and because several common questions of law exist."). Nothing in Lead Plaintiff's analysis of the claims and defenses in this case suggests that there are substantial differences between the interests of the Class Members. Further, Class Members' claims all spring from the same common source. Therefore, the commonality requirement is met.

### C.    Typicality and Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(3) further requires that the proposed representative's claims be "typical" of the claims of the class. Here, Lead Plaintiff's claims are "typical" of other Class Members' claims because they arise out of the same alleged conduct. The Supreme Court has recognized that the commonality and typicality analyses "tend to merge." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). *See, e.g.*, *Theragenics*, 205 F.R.D. at 695 (finding typicality to be satisfied where each class member and proposed class representative alleged securities law violations and purchased stock at prices inflated by defendants' misrepresentations). Hymie Akst is adequate to serve as class representative, because his interests do not conflict with those of any member of the Class. A party's interests will only be deemed antagonistic to those of the rest of the class if the conflict is fundamental - going to the specific issues in controversy. 1 Newberg & Conte, NEWBERG ON CLASS ACTIONS §3.25 at 3-319 to 141; §3.26 at 3-143 to 144 (3d ed. 1992). Here, there is no question of adverse interests: indeed, given that Mr. Akst's claims are identical to other Class Members and he is subject to no unique defenses, it is difficult to identify any way in which his interests could be adverse to those of the Class.[3]

---

[3] Mr. Akst's certification, which includes his trade data, is attached to this brief as Exhibit A.

Rule 23(a)(4)'s adequacy requirement is also met in this action because Mr. Akst will fairly and adequately protect the interests of the Class. The adequacy requirements of Rule 23(a)(4) may be divided into two separate prongs: (i) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and (ii) whether plaintiffs have interests antagonistic to those of the rest of the class. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988).

Lead Counsel have considerable experience, having successfully prosecuted many securities and complex class actions in courts throughout the United States. *See* Firm Resumes of Glancy Binkow & Goldberg LLP and Saxena White P.A., Dkt Nos. 8-2 and 14-4. Further, prior to reaching the Partial Settlement, Lead Counsel undertook an extensive investigation, drafted a detailed amended complaint, and fully briefed the Settling Defendants' motion to dismiss. By the time settlement discussions began, Lead Counsel were clearly informed of the strengths and weaknesses of Lead Plaintiff's claims and were able to use this knowledge to engage in a rigorous, lengthy negotiation process with Defendants. Lead Counsel are skilled and experienced litigators who are clearly qualified, experienced, and generally able to conduct the proposed litigation. Thus, the adequacy requirement is also met.

The Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are fully met in this action.

## IV. PREDOMINANCE OF COMMON ISSUES AND THE SUPERIORITY OF THE CLASS ACTION MECHANISM

In addition to satisfying the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the three subparts of Rule 23(b). Pursuant to Rule 23(b)(3), the Court must consider: (1) whether issues of law or fact common to class members predominate over questions

affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As demonstrated above, this litigation involves both questions of law and fact common to the Class. For predominance, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Theragenics*, 205 F.R.D. at 697. However, "issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989). Lead Plaintiff proffers that there are no significant – let alone predominant – individual issues in this case. Indeed, it is difficult to discern any liability issues not common to all Class Members. Where, as here, Class Members are subject to the same alleged misrepresentations and omissions, and where, as here, it is alleged that Defendants' misrepresentations were part of a common course of conduct, common questions predominate. If Lead Plaintiff and each Class Member were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. *See In re BellSouth Corp.*, 2006 WL 870362, *4 (N.D. Ga. April 3, 2006) (finding the class action to be superior method for litigating a federal securities action because "prosecution by individual shareholders would be prohibitive from both the individual plaintiff's and the court's perspectives.").

The class action device is also the superior method for resolving the claims in this action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities law. *See Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "[m]ost of the plaintiffs would have no realistic day in court if a class action were not available").[4]

Further, certification of the Class for settlement purposes is the superior method for resolving the claims of Lead Plaintiff and the Class. Without the settlement class device, the Settling Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Stipulation. Moreover, certification of the class for settlement purposes will allow the Partial Settlement to be administered in an organized and efficient manner. In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes.[5]

## V. THE PROPOSED NOTICE IS ADEQUATE

The parties have negotiated the form of the Postcard Notice, the Publication Notice and the Notice to notify the Class of the terms of the Partial Settlement, the Class Members' rights in connection with the Partial Settlement, and the date of the Fairness Hearing for final approval set by the Court. The Postcard Notice, which will be sent by mail to Class Members, notifies Class Members of the Partial Settlement and directs them to the Settlement website, at www.searchmediasettlement.com, where they can find a long form Notice prepared according to the model published by the Federal Judicial Center,[6] a Proof of Claim Form, a summary of

---

[4] The alternative to certifying the class for settlement purposes would be to unleash hundreds, if not thousands, of individual actions into the judicial system, which could result in varying adjudications of liability, or risk that many class members would be unable to seek redress because they could not afford to proceed on an individual basis. The cost and expense of such individual actions, when weighed against the individual recoveries obtainable, would be prohibitive.

[5] Additionally, Rule 23(g)(1)(A) states that, "a court that certifies a class must appoint class counsel." Fed. R. Civ. Pr. 23(g)(1)(A). Lead Counsel satisfies the requirements of Rule 23(g) and should be appointed as class counsel. As discussed above, Glancy Binkow & Goldberg LLP and Saxena White P.A. have fairly and adequately represented the Class, and will continue to do so. Proposed Class Counsel are knowledgeable about the applicable law, are experienced in handling class actions, have performed substantial work in vigorously pursuing the Class' claims here, and have committed substantial resources to representing the Class. *See* Fed. R. Civ. Pr. 23(g)(1)(B).

[6] The FJC model is available at http://www.fjc.gov/public/pdf.nsf/lookup/ClaAct13.pdf/$file/ClaAct13.pdf.

important dates and deadlines relating to the submission of the Proof of Claim, objections and exclusions, an executed Stipulation of Settlement, and other important documents filed with the Court.

Lead Counsel are using the traditional methods for notifying Class Members of the Partial Settlement: notification by mail and by publication in a national newspaper focusing on investors. Upon entry of the Preliminary Order, the Claims Administrator will mail the Postcard Notice to Class Members, who can be identified from stock transfer records and its own proprietary database. Lead Counsel will cause the Publication Notice to be published in the national edition of *Investor's Business Daily*. Notice programs such as this have been approved in a multitude of class action settlements. *See, e.g., In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 550-51 (N.D. Ga. 1992) (notice by mail to class members who could be identified and by publication to those who could not be identified satisfies due process requirements); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 106 (D. Conn. 2010) (approving notice program where notice was mailed to class members identified from transfer records, summary notice was published, and settlement website was maintained for further information).

Upon notification of the Partial Settlement, Class Members will have three choices: (1) approve the Partial Settlement and share in their pro rata share of the Partial Settlement proceeds by submitting a Proof of Claim; (2) exclude themselves from the Partial Settlement by "opting out" of the Class, in which case they will not participate in the Partial Settlement recovery and will retain their individual claims against the Settling Defendants; or (3) object to the Settlement or any of its terms (including the Plan of Allocation and the award of attorneys' fees and expenses.. To participate in the Partial Settlement, Class Members must submit a Proof of Claim within the time specified in the Preliminary Order. Class Members who wish to exclude

themselves from the Partial Settlement must submit a timely request for exclusion. Class Members who wish to object to the Partial Settlement must file and serve a notice of their intention to appear and object. Objectors can submit a memorandum of law in opposition to the Partial Settlement and can appear before the Court at the Fairness Hearing. This Court should find that the notice procedures are reasonably calculated to provide sufficient notice of the Partial Settlement to the Class.

## VI. PROPOSED SCHEDULE

Lead Counsel respectfully submits the following procedural schedule for the Court's review and approval, which summarizes the deadlines in the proposed Preliminary Order:

| **Event** | **Proposed Deadline** |
| --- | --- |
| Mailing of Postcard Notice<br>*See* Preliminary Order ¶7 | 14 days after entry of Preliminary Order |
| Publication of Summary Notice<br>*See* Preliminary Order ¶7 | 14 days after entry of Preliminary Order |
| Notice Posted on Settlement Website<br>*See* Preliminary Order ¶7 | 14 days after entry of Preliminary Order |
| Submission of Requests for Exclusion<br>*See* Preliminary Order ¶11 | 21 days prior to the Fairness Hearing |
| Submission of Objections<br>*See* Preliminary Order ¶12 | 21 days prior to the Fairness Hearing |
| Submission of Proofs of Claim<br>*See* Preliminary Order ¶15 | 60 days after the Fairness Hearing |
| Fairness Hearing<br>*See* Preliminary Order ¶5 | 100 days after entry of the Preliminary Order[7] |

---

[7] 28 U.S.C. § 1715 requires Harmony Gold to notify certain federal and state officials of the proposed Settlement within 10 days from today. Subsection (d) requires the Court to wait 90 days from the date these officials are served to give final approval to the proposed Settlement. In order to comply with the statute, Class Counsel respectfully requests that the Court schedule the Fairness Hearing to occur at least 100 days, and no later than 120 days, from the date the Settlement is preliminarily approved, subject to the Court's convenience.

## VII. CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Order, granting: (i) preliminary approval of the Partial Settlement; (ii) provisional certification of the Class for purposes of the Partial Settlement; (iii) provisional appointment of Plaintiff Hymie Akst as Class Representative; (iv) approval of the form and manner of giving notice of the Partial Settlement to the Class; and (v) approval of the proposed schedule for the dissemination of the notice program and other proceedings, including the Fairness Hearing.

Dated: November 30, 2011                Respectfully submitted,

By: */s/ Joseph E. White, III*
Joseph E. White III (Florida Bar # 0621064)
Christopher S. Jones (Florida Bar # 306230)
Lester R. Hooker (Florida Bar # 0032242)
Brandon T. Grzandziel (Florida Bar # 0058732)
**SAXENA WHITE P.A**
2424 N. Federal Highway, Suite 257
Boca Raton, Florida 33431
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

Lionel Z. Glancy
Peter A. Binkow
Robert V. Prongay
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Co-lead Counsel for Lead Plaintiff Noel Upfall*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on November 30, 2011, I filed the foregoing with the Court's CM/ECF System, which will send a notice of filing to all registered users.

                                                               */s/ Joseph E. White, III*
                                                               Joseph E. White, III